The case for argument this morning is 17-1693 Diaz v. O'Rourke. Mr. Atek or Atek? Mr. Atek, Your Honor. Good morning. Good morning, Your Honor, Chief Judge, Your Honors, esteemed opposing counsel. May it please the Court. The Secretary has provided no reason why Hispanic ethnicity is a more likely etiology for a neck condition than two in-service military accidents, one involving the veteran being ejected from the truck at 20 to 30 miles per hour and the other involving a car accident with live serrations to the skull and requiring X-rays of the skull. Well, did anyone say that Hispanic ethnicity is a factor or how it's a factor? In the opinion from the examiner in 2008, Your Honor, the physician's assistant commented in his opinion section that ethnicity was a more likely etiology. Certainly could not be saying somebody else's ethnicity was a more likely etiological factor for this veteran. They included a number of factors, a list of factors, and one of them was ethnicity. Yes, Chief Judge. Yes, Your Honor. We acknowledge that there were several references to other factors, but a reference to ethnicity in a list of factors is still… There were several. There were quite a few. Age, obesity. There were several others. Lifestyle. Deconditioning, concomitant health issues, subsequent trauma, lifestyle choices, post-service occupation. It does say ethnicity. That was a factor. But it doesn't say ethnicity of Hispanic lineage. It certainly does not… I'm sorry, Your Honor. No, go ahead. It certainly does not say specifically Hispanic ethnicity, but in the context of that VA medical opinion, it's hard to tell what other ethnicity might have been referred to. But did it describe how ethnicity affected the result? For example, it also says lifestyle choices. Did it go into a discussion of those lifestyle choices and how they affected the results here? The examiner did not. He also did not go into any medical reasons why the neck condition was not related to service other than the conclusion, which the board then found highly probative, the fact that these more likely etiologies for this veteran. The board personalized it to this veteran. So regardless of what the examiner did in his opinion, what the board did was they said the more likely etiologies for this veteran are highly probative. And those are the board's exact words. They had a chance to say that this is just a passing reference or just a general recitation of risk factors and did not. But there was a general acknowledgment that he had sustained a neck injury, correct? I mean, that's… And his own recollection was that he had sustained a neck injury when he turned around too fast at one point. And then later he says he sustained a neck injury when he fell off a military vehicle and was thrown off. Mr. Diaz has consistently throughout the case attributed his neck injury to the military incidents. Now, he did have treatment from 94 to 95 and then into the 2000s for some incidents that occurred post-service. But he's always attributed to military service the two accidents that occurred, the June or July of 1965 accident where he was ejected from a truck. And you can see that at Joint Appendix 103. And then also he's attributed to the February 1966 accident, which occurred behind the hospital at Fort Hood, where he was then admitted to the hospital, had to have his skull x-rayed and lacerations to his skull sutured, suggesting that there was possibility of damage to the neck. But at the very least, it was an incident in service that he has always consistently claimed is related to his current condition. But your claim here is equal protection, right? It is, Your Honor. We're arguing that based on the improper reference to ethnicity, his equal protection rights were violated. I'm looking here at the Court of Veterans Claims opinion. Is there any indication that they relied on – I mean, they do cite the examiner's full paragraph there. Any indication that they relied on any of the details there listed? They did not. And that's one of our arguments here, Your Honor, is that the Veterans Court did not address the argument that we presented and that was necessary because they decided the case on all other points of error that we raised. Because it was presented, because it was necessary, we believe that the Veterans Court should have addressed it, and they did not. And how would they have had to address it? Would they have had to go through – I mean, this, as Judge Rayner pointed out, this statement by the examiner not only lists numerous factors, but says specifically these etiologies are not limited to. So if we're going to rely on this, I don't know how one relies on whether or not they used any of this stuff because there's a list that's not even enumerated that they just describe as more common. To the second question, Your Honor, I'd like to call the words of Chief – I'm sorry, Chief Justice, I keep attributing the wrong rank to judges, and I apologize for that – to Justice O'Connor in the Adoram case. And she, quoting Justice Stevens in an earlier case, talked about how because ethnicity is so seldom a relevant base for government action and because it is so harmful to the body politic that any reference to an ethnicity classification needs to be clearly identified and unquestionably legitimate. So in that context, the mere reference of ethnicity for a Hispanic veteran, who in the record is known to have not been a United States citizen during his service, certainly all those factors call into question whether this examiner was making a passing reference with the other listed etiologies. That question is resolved when the Board itself calls in and says the more likely etiology for this veteran. Those are the words of the Board judge. The Board judge had an opportunity to come back – Well, how do we know? It may be age. There's an age discrimination law, too. So does the suggestion of age mean that there's some problem with that factor as well? We would think that age – I would think that age is different from ethnicity in the sense that age is not a suspect classification requiring strict scrutiny, whereas ethnicity and race are. And so certainly the burdens that the court would have had to look at in assessing – What about gender? What is listed gender? Gender is an intermediate scrutiny, if I'm correct. So I think that there would be a different level of scrutiny that the court would apply. But again, our argument at the court was whether there was inadequate reasons and basis for relying on ethnicity, any ethnicity, but specifically this veteran's ethnicity, in denying service connection. Let me just understand your point. Here there is a veteran with a Spanish name. Are you saying that he should have come in as John Doe? All that they reported was the one word, Hispanic. So you're saying that that should be concealed, that there is a heritage, a name with an implication of an ethnic background? Name alone wouldn't do it, Your Honor, I don't think. I think merely mentioning the name or even in the general medical summary where we often see – The name is there. It's right there in all the documents and so on. It is there. So mention or not, it's there. You're saying that ideally the name should be changed so that there's no way that the examiner could guess or suspect that there might be some issue that could trigger some sort of discriminatory response? I'm not saying that at all, Your Honor. In fact, what we're saying – Then what are you saying? Because there wasn't much more of a reference to background than that which would come from the name. We're saying first that the examiner should have, if they're going to say, if the examiner is going to say that ethnicity was an etiological factor, whether it's one of many or one by itself, that they should provide some reason to explain – There must be ten attributes in order to define this veteran. They shouldn't go anything out? In that case, I would think that the examiner – what we're asking this Court to do is to say that the examiner should have at least provided some reasoning to connect the ethnic background of the veteran that it relied on. This is not a case with time and again we see complement exams that mention the ethnicity of the veteran, but I have not yet seen one in ten years of doing this where a veteran's ethnicity has been included in the opinion itself. So the examiner should have said this veteran has a Hispanic name? Should have said that this is the reason that I believe that his ethnicity or his age or the other factors, if they're a protected class, should at least explain why. In this particular case, Hispanic. The inclusion in the list itself is not improper, Your Honor. I think what we're looking at here is the difference between a passing reference and an ethnic classification. If the board judge in making the decision had looked at this and said, the examiner made a passing reference to ethnicity – and suppose a veteran is not obese, then obesity is irrelevant, correct? It can't be one of the factors if he's not obese. If he's not obese, it could not be one of the factors. Because when the board made its decision, it looked at that exam and it said the more likely etiology for this veteran. So any passing reference that could have been there in the examiner's opinion was negated by the board judge's decision saying that the more likely etiology was his word. So let's go down the path a little bit. This is an equal protection claim that you have. Have you established or did you offer proof? Did you meet your burden to show that the VA had an intent to discriminate? You have to show that at least that there's a disparaging effect. So you have to tie the comment or the ethnicity. You have to tie that to the medical opinion. You just can't say ethnicity and we have an equal protection claim. You have to tie that to the opinion, correct? We do and we have to either the opinion or the board judge's decision. Where is that tied? In our opening brief before the Veterans Court, we argued that the VA examiner referenced ethnicity and that we were arguing that there was no reasons or bases for that reliance there. Before this court, certainly I have to be candid, Your Honor, is that my argument at the Veterans Court was not the most forceful equal protection argument that I could have made at court. You left something on the table back at the board, didn't you? I mean, you did not link this to the medical opinion and to the result here. That's why you argued before us. You want us to say that just a mere inclusion of the word ethnicity in this list of a number of factors, that that itself will grant you an equal protection clause claim. We don't want to say that, Your Honor. We're not specifically saying that. I think we're trying to make a distinction between a passing reference. I will concede that my argument at the Veterans Court was not as forceful an equal protection argument as I could have made, but it was a very calculated decision based on Rule 28's requirement that we have a statement of the issue, included ethnicity in that, that we made the basic argument with citations to the record, the law that we were relying on. My client was concerned on one hand. Was that argument limited by the fact that you didn't really have a fact secure at hand? It was not limited by that. It was limited by concerns with my client. My client was concerned that he was going to have to go back before this board judge in a remand or in his other pending claims. He did not want to make a forceful equal protection argument such that he would be seen as impugning a board judge's integrity. But at the same time, he felt that ethnicity was the reason, that he was denied benefits because he was Hispanic. And so we made a calculated decision to not only present the argument, but also to tread lightly on it. On this record, how can you make that statement that that was the basis for his denial? I mean, other than that one sentence, which is just in the context of, the sentence starts off by saying, he hasn't proven this. There are all these reasons to disprove it. And then they just have, in addition to that, indeed, more likely reasons are the others. That really doesn't have to do with the basis upon which they denied it. And, in fact, that's sort of proven by the whole discussion of the Court of Veterans Claims and their calling out what they're affirming in terms of what the board said has nothing to do with that one sentence. It's all about the facts of this case. I disagree respectfully, Your Honor, because the board decision actually tied in this veteran. And when you look at the actual facts of it. Well, then why don't we look at the Court of Veterans Claims decision, which is what we're reviewing here. So why don't you show me in that where they're calling out anything, where they're relying on anything that the board said, other than the specific facts in this case. In terms of the ethnicity classification, Your Honor, so I understand your question. Right. I mean, I think the only – am I wrong? The only reference to ethnicity in the Court of Veterans Claims was just a citation to that full paragraph, which starts off by including all of the reasons why they're denying it that have nothing to do with ethnicity. That is the only citation. And if you look at the court decision, there is no discussion of why the ethnicity, any reasoning for it. No, but there's plenty of discussion in terms of all of the facts that led them to conclude that your client was not entitled to the disability claim. And if you take that examiner's opinion off the table that has the ethnic classification, what you're left with is at the very least equiposant and probably very likely preponderance of the evidence showing that he's entitled to service connection. If you take that 2008 examiner's opinion off the table, you're left with a 2004 examiner's opinion, which the board itself did not find probative or adequate. You're also left – What are we talking about, taking it off the table, everything that he did, or just that sentence? Either way that you were to go, Your Honor. If you were just to take that sentence off the table, what you're left with is two factors in his opinion, finding that there's no connection to service. And it's a failure to explain 40 years of treatment, which the veteran did explain and nobody's ever challenged, and then also no evidence in the medical records of the severity of the accident, which aren't really necessarily relevant when you have the veteran's unchallenged determination or discussion of what happened in that accident. So when you're left with those two things without the ethnicity classification on the table, put on the other side of the table what evidence there is that the court – The Court of Veterans Claims reviewed the board decision. As you know, that's not within our standard of review to review or assess the validity of the facts here. But when the Court of Veterans Claims did it, it spoke in detail about all of the findings of the board with respect to things other than ethnicity, and it relied on them and agreed with them. And that's part of our concern, Your Honor, is that we feel that we were entitled to at least a discussion from the court. We presented this issue that there's no reasoning for the ethnic classification. We can't determine how much that did or did not play a role. Was that in the calculus that it's less likely or only in the calculus that it's more likely? We can't really have the benefit of challenging that classification here if it's not – We can't review that here. We can't re-weigh the evidence on your behalf or on behalf of the VA. Your jurisdiction allows – this court's jurisdiction allows the court to review de novo the constitutional claim and certainly allows – Right, but not the type of factual findings that you're talking about. Factual findings are reviewed de novo in a constitutional claim under 7292, this court's jurisdiction. So I believe this court does have the authority to review, at the very least, for finding that there's no reasoning provided for the ethnic classification in the board decision. But why don't you look at Appendix 4, the main paragraph, which is their opinion, where they're reviewing – the Court of Veterans Claims is reviewing the board. They discern no error in the board's finding that the connect condition is unrelated to service, and they go on to specify the details of that, no reference to the ethnicity subject, no reference to anything about that entire sentence. This is all based on facts. So, I mean, at least sub silencio, they're saying we're not – we don't think this was because of ethnicity. We're making this determination, as did the board, for all of these independent facts with which we agree. And we would still be entitled, Your Honor, to review under Linville, even if they were denying it sub silencio and not saying anything about the constitutional claim. We're still entitled to review. The facts that are in that page that you cited, a majority of them come from the November 2008 exam. Right. And then the ones that don't come from it all seem to be – So what if they come from the exam? Why is that probative of anything? Because it suggests that without the classification in that exam that the facts might have been weighed differently. Mr. Diaz has a substantial right to adequate reasons and bases in a board decision. And if he doesn't have that adequate reasons and bases, how can he argue at the Veterans Court whether or not what degree the ethnic classification that he believed existed in that examiner's opinion, that he believed existed in that board decision, he has no ability to argue how those were weighed out before the Veterans Court. So that denial of the substantial right is prejudicial to Mr. Diaz, and that certainly is within the court's jurisdiction to be able to remedy that. Okay. We're well into the rebuttal, and that's all involved in that case. But we'll restore your rebuttal time while we hear from the government. Thank you, Your Honor. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court. We ask this Court to affirm the decision below because Mr. Diaz has not established an equal protection violation. Mr. Diaz has argued through his counsel that his claim for veterans' benefits was denied because he is Hispanic in violation of his equal protection rights. To establish an equal protection violation, Mr. Diaz must show that the government intentionally discriminated against him on the basis of race, gender, or national origin. Mr. Diaz has not met this burden because there is no evidence of discrimination. Would it be sufficient if there was evidence that they considered his ethnicity in making their determination? Would that be sufficient? Your Honor, I would depend on the facts of the case. In this case, there is no evidence that they did consider his ethnicity. The Board and the Veterans Court did not even mention that he was Hispanic. Look at the sentence that we're all talking about here. The last sentence is the one that refers to ethnicity. What if they had said, more likely etiologies are, and then they had said Hispanic ethnicity? That would be a closer call, Your Honor. However, it seems if everything else was the same, that still would not establish an equal protection violation. What is that? Do you have to exert a burden to show intent to discriminate? Yes, Your Honor. The appellant has the burden of showing that the government intentionally discriminated against him. In this case, even if the list of more likely etiologies specified Hispanic ethnicity instead of just a generic ethnicity, there still would be no evidence that the Veterans Court or the Board relied on Mr. Diaz's Hispanic ethnicity in denying his claim. I don't understand what you're saying. Firstly, we know he's Hispanic, so if you're using ethnicity, we're not using ethnicity that he's Danish or white. That's his ethnicity. The Board relied on these factors, so I don't understand what you're saying. Let's assume it said Hispanic ethnicity because they're talking in this sentence about his claim conditions. If it's his ethnicity we're talking about, then clearly we're talking about Hispanic ethnicity. Take that as a given. What if it had said Hispanic ethnicity? On the facts of this case, there still would be no equal protection violation. I would like to move back just one moment to address one thing that you said, Your Honor. We do not know that this list of more common etiologies, that ethnicity is intended to be Hispanic ethnicity. I would point out that at least one of these common etiologies does not apply to Mr. Diaz, and that is obesity, just as a matter of height and weight calculation. Many of the other etiologies listed, there is no evidence as to whether or not they apply to him. And, in fact, in his brief to the Veterans Court, Mr. That, there is no evidence to say one way or the other other than what's on the face of the document. It appears that this was simply a list of some, a non-exclusive list of some of the more common etiologies. As Mr. Diaz stated to the Veterans Court. Why is it there? It's part of their analysis. They say, on the one hand, he's not shown any of this. And what sort of supports that is that it's more likely these other things. So it's part of their analysis, right? I would respectfully disagree, Your Honor. The Veterans, the VA examiner concluded that there was no evidence of service connection. The VA examiner was tasked with determining whether it was at least as likely as not that Mr. Diaz's disability was related to his in-service connection. Once the VA examiner makes that determination, there is no requirement to determine the actual cause of the current disability. So why is that sentence there? Your Honor, that sentence probably does not need to be there, having already determined that there is no service connection. Well, that suggests more of an equal protection problem than not, right? If it wasn't necessary to do it, but they considered something anyway? I respectfully disagree, Your Honor. As I said earlier, there is no evidence that these etiologies apply to Mr. Diaz. It appears that what happened is that's what the board was doing. This is clear error because that's what he was saying. He's saying the more likely etiologies for these claim conditions are the following. That's suggesting that he's saying, no, there's a more likely diagnosis. We're only talking about this claimant. We're not talking about some hypothetical group of people. We're talking in this paragraph about his claim. Well, yes, that is correct, Your Honor. However, the VA examiner did not conclude that any of these etiologies applied, only that it was more likely that some of the common etiologies might apply because there was no evidence connecting the spinal neck condition to his in-service. I don't follow that quite. Why is it that it doesn't apply? It says the more likely etiology for these claim conditions. And this is a medical report. So it seems to me that there's a finding here of osteoarthritis. And then it goes on and says, but not limited to, and then it lists all the different factors. I mean, those factors count, unless you're saying they shouldn't have been there, that it's a mistake to have them there. The VA examiner is not, on the face of this document, does not state that any of these necessarily explain Mr. Diaz's osteoarthritis, his neck condition. More likely. The VA examiner seems to be saying that it's more likely that some of the more common etiologies, and this is not a complete list, apply in this case because there is no evidence that his in-service accident caused a neck condition. And that's based on the fact that there was. If there's no evidence as to this list here, obesity and deconditioning, then why are they in the doctor's report? Your Honor, I, on the face of the document, doesn't explain why. It seems, as Mr. Diaz stated before the Veterans Court, that the VA examiner Could it be then that the inclusion of ethnicity did have a disparaging effect on the doctor's opinion? There is no evidence of that. And it is Mr. Diaz's burden to show evidence of discriminatory intent. The Veterans Court and That's an intent, and perhaps that burden exists, but also that burden is met if it shows that the ethnicity issue had a disparaging effect on the doctor's opinion. There is still no evidence of that. As I pointed out, obesity clearly does not apply to Mr. Diaz, and yet that was included in the list. There is no evidence as to some of these other etiologies that they, whether or not they apply. It appears to be just a general list, as Mr. Diaz stated below, which may or may not be applicable to him. Well, from here, I mean, looking at the list, obesity doesn't apply, you say, and I don't know about deconditioning, I don't know about hereditary, but ethnicity is there, and then the report does make reference that he's a Hispanic male. It seems to me that that ties back to the fact that he's a Hispanic male, that that's his ethnicity that we're dealing with. And if that's not a factor, then why is it in the medical report? I can't say why it is in the medical report, but there is no evidence that the reference to ethnicity was intended to relate to his Hispanic ethnicity. From the evidence, we do not know whether Hispanic ethnicity makes a person more or less likely to suffer from a spinal condition. Well, I'm glad to hear that personally. I'm not sure that helps your argument much here. Well, this was a fact. I mean, they find all the reasons why this wasn't service-connected, and what they weigh on the other side is, and it has some significance that these etiologies for these claim conditions could be a result of all of these things. So what if he came in? What if they listed three things, ethnicity, age, and obesity, and he could show, well, they're wrong about this. Forget the ethnic stuff, but just they're wrong about this because I don't have these factors. So there was no alternative basis which could have caused that. Wouldn't that be probative of the outcome here? Your Honor, it would not be because the VA examiner, the board, and the Veterans Court are not required to determine an alternative. What the attitude said is more likely etiology for these claim conditions is the fact that the veteran fell off a roof six years ago. And what if that, in fact, was not true? Wouldn't that be a problem in terms of the analysis? That would be a problem in terms of the analysis. However, the claimant below still has the burden of showing, of establishing a service connection. So in that case, that might be harmless error if they were incorrect about the actual cause of the disability. But that is a question that they don't have to reach, and there is no evidence. Well, let me ask you, why, as your friend said on the other side, why didn't the Court of Veterans Claims deal with this issue? If it didn't matter, if it had no relevance, if they never really considered it, why didn't somebody just say so? Your Honor, the claimant appellant did not raise, fully raise this issue before the Veterans Court. In Mr. Diaz's opening brief to the Veterans Court, he did not raise a constitutional issue. He argued that the board did not have adequate reasons and basis. He mentioned equal protection, but he didn't ask for constitutional strict scrutiny until his reply brief. And therefore, the Veterans Court was not required to address the issue. You're not arguing to us that he waived the issue. He did waive the issue below, Your Honor. And that appears to be why. Because it was raised primarily in the reply brief? Yes, Your Honor. And therefore, the Veterans Court was not required to address it. In addition, the courts, appellate courts, have wide latitude in determining which issues to address and which not to address. So this is an issue that wasn't fully raised until his reply brief. So there was no, the Veterans Court was not required to address it in its opinion. To be sure that I understand the argument, we haven't really gotten to the merits. The facts aren't before us. The record states that he agreed that he'd had an accident in 1995 and initially said that he thought that was the reason for his current disability. Then with the passage of time and so on and the arguments, the causation was traced back to the military service. Now, the impression that I got from the briefs is something that we haven't really been discussing here, that the evidence before the VA, the VA examiner, and then the court, was that this established sufficiently or by a preponderance or whatever standard they were applying, what was the cause for the current disability as compared with tracing it back to the military service for 30 years earlier. Now, here we have this tabulation of 10 aspects of the ideology describing this person, which has taken on a life of its own, I assume in part, because that would be the only basis for appeal to this court if we can bring a constitutional issue into it. And yet I haven't really heard any defense of the facts on which, for the record, it looks as if the board and the veterans court were relying. Is this something that you agree we should set aside and just concentrate on how much weight to give to the silence other than the listing of the Hispanic background? Your Honor, I would have two points to address there. The first is that the veterans court and the board's weighing of evidence is not within the jurisdiction of this court, which is why I haven't addressed it much, but there is significant evidence in support of their determination. Amongst other things, there was no contemporaneous medical records showing a neck condition in service. At separation, the clinical evaluation was normal. There were no complaints of neck problems. And as you pointed out, it wasn't until 1994, almost three decades later after Mr. Diaz left service, that he first sought medical treatment for a neck problem. Looking at all of that evidence, the board and the veterans court concluded that there was no probative evidence tying his current neck condition to his in-service accident and that there was actually no evidence that he had any neck condition before 1994. Yes, of course, it's true that we don't review and refine the facts, but in looking for some perspective as to the context for this reference along with a bunch of other aspects of the ideology concerning Mr. Diaz as to how to understand whether there is or is not a constitutional issue is a matter of balance as well, is it not? It could be a matter of balance if Mr. Diaz was able to show evidence of discriminatory intent. In this case, there is no evidence, but even if there was, the harmless error standard would still apply. And as you pointed out, Your Honor... I'm not sure. If you're going there, I'm not so sure that we want to argue that discriminatory intent is harmless error. In this case, the court and the board found that there was no probative evidence of a service connection. So in this case, all of the evidence is on the side of no service connection. Therefore, there was no discriminatory intent, there was no discrimination, but even if there was, there would be no evidence below upon which Mr. Diaz could prevail if this was remanded. And those factual considerations by the Veterans Court and by the board are outside of the jurisdiction of this court. Discriminatory intent, he'd automatically prevail. Would he not? I mean, if that's the question before us, I'm not so sure that the VA is on the right side of that. If he was able to show discriminatory intent, he may prevail in this court, but for his Veterans Benefits claim, he would still have the burden of establishing a service connection. That is his burden below, and as the board and the court found, there was no probative evidence supporting that claim. I see that I am out of time, Your Honors. In conclusion, we respectfully ask this court to affirm the decision below. Thank you. An unexplained ethnicity classification in a medical doctor's opinion, or in this case a physician assistant opinion, demonstrates intent to discriminate, specifically when there is no explanation of how that. . . How does it demonstrate? There's no explanation of how the ethnicity played a role. There is limited, if any, medical connection of the nexus. There's no. . . If you look at Dr. Fair's opinion where he lines out the medical connection between the incident and the disability, you see a very thorough medical opinion. That does not exist in this physician's assistant's opinion. What exists there is, oh, he didn't say anything for 40 years because he was raising children trying to earn a living with a sixth-grade education, but it doesn't even address that fact. It doesn't talk about why ethnicity is a factor. If it came in, if this examiner had come in and said, ethnicity is a factor and here's 10 studies or one study showing that Hispanic origin is a more likely etiology for a neck condition or any other condition, I don't know that we'd be here today, but it's not explained. Because it's not explained and because the other factors on that list are either completely unexplained, don't make sense, or aren't true, it suggests that they're masking the true motive. Now, we don't have to actually show there's a subjective motive to discriminate. If we were to have to show that, that's an extremely high burden to show that I don't think has ever been placed on somebody in an equal protection claim. But what we do have to show is that the lack of any explanation of why the ethnic classification played a role suggests that it played a bigger role than the examiner wanted to put in there. You're saying there's a presumption that anyone with an Hispanic name that goes through the system of disability is discriminated against? No, Your Honor, I'm not saying that. What I'm saying is that when we show that there's an ethnic classification unexplained on its face that we've pled a prima facie case of discrimination in violation of equal protection requiring... Did you waive that argument? We did not waive that argument, Your Honor. And under Court Rule 28... What you argued before us is that the veterans school or the board did not supply a well-reasoned decision. And by well-reasoned or thorough decision, you argue that the reason you can tell this is not a well-reasoned decision is because it doesn't mention equal protection. But it doesn't seem to me that you raised that until you replied briefly. We raised equal protection in the opening brief. And, in fact, we raised it in our summary of issues presented to the Court. Did you argue that? Did you make the argument? We made two citations to the record, cited the VA examiner's opinion, and then we also discussed that equal protection and explained our argument saying that if an examiner can deny benefits or deny a nexus based on ethnicity, then there is no equal protection. We made that argument. There's no requirement that we plead the Secretary's burden. If this was an employment case, if we pled a prima facie case of discrimination, there's no requirement that we would need to prove or plead a legitimate non-discriminatory reason. Did you plead that there was intentional discrimination here? I don't think we used the words intentional discrimination, Your Honor. What we did was we argued... Did you say there was a violation of the equal protection clause? We did say that in our opening brief at pages 53. And you explained how? We explained how we thought that there was a connection. Now, as I concede, we did not make the most forceful argument, but we made enough under 28A, which is the court's rule. What else could you... What do you think you left out? Certainly I think we've made a much more forceful argument here for the equal protection violation. And if the court finds that we waived it or didn't present it at the Veterans Court, then certainly that issue is squarely before this court here. And we've argued at this court that there is no explanation for the reason of the classification. The board judge, we've argued, personalized it to this veteran. And then further, we've argued that when you look at all the factors in whole, that there's nothing that explains that. There's no... We have nothing to go on to actually explain how Hispanic ethnicity was or was not a more likely ideological factor. And so we have to go with the plain words as they're written on the page. We did not... Again, as I mentioned, we'd have to... We argued that here at this court. And I don't think that it's a harmless error if the court is inclined to find that there was a reliance on ethnicity. We argue that it's not harmful. We would argue the court should consider Lesage and Christian and how they correlated the burden of proof in the underlying claim to the harmless error and that the government would have to show compelling evidence that he's not entitled to service connection in order to find an equal protection violation. So you agree there's a harmless error? I do not agree that, Your Honor. I do not agree. No, that applies, that that principle applies. I do not. I'm making an alternative argument. And just in the abundance of caution, I don't believe that harmless error can apply to an equal protection. It can apply to due process because that's a more fluid concept. Equal protection, particularly in the context of ethnicity and race, requires strict scrutiny. And saying that there's harmless error in an equal protection violation, unless there was, as there was in Christian, clear evidence that a group of male... I'm sorry, of white officers would not have been retained in military service even but for the minority preference, there was convincing evidence in that case. And in that case, the court found it. But in any other case where you're looking at here, you're not looking at compelling or convincing evidence. You're not even looking at substantial evidence that the classification didn't play a role. And so because of that, if the court is defined there is harmless error in an equal protection context, what that means is that it essentially reduces strict scrutiny to rational basis, which has never been permitted by the Supreme Court. If there's no further questions, thank you, Your Honor, for the opportunity to present the argument.